FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

04 JUL 19 AM 11: 06

CLERK-ALBUQUERQUE

BARBARA L. PERKINS,

    Plaintiff,

vs.                                     CIVIL NO. 02-1392 MCA/WWD

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS,

    Defendant.

## DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The defendant, through the undersigned counsel, submits the following Proposed Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1.     Perkins was employed as an attorney for the Department of Veterans Affairs (VA) from August 1986 to October 19, 2001. (Perkins; Complaint, ¶¶ 11, 12, 96)

2.     From February 1991 through October 19, 2001, Perkins's office was located at the VA Medical Center in Albuquerque, New Mexico. (Perkins)

3.     The essential functions of Perkins's attorney position are set forth in the Position Description. Exhibits A, B.

4.     The position Perkins held of general attorney required her to function with a a high degree of mental ability. (Exhibit A; Yutzy)

61

5. Since 1992, Perkins has suffered from a mental condition diagnosed as Major Depression and Dysthymia. (Perkins; Schwartz; Yutzy)

6. In 1996, Perkins filed the first of her two EEO claims against the VA. (Perkins; Complaint, ¶ 36)

7. In October 1999, one of the two attorneys assigned to the VA Medical Center office (Virgil Lewis) was assigned to work at the VA's regional office in downtown Albuquerque. (Ferris)

8. As a result of her depression, Perkins has a diminished mental and physical functional capacity, which is at times severe and completely debilitating.

9. For all times relevant to this lawsuit, Perkins had a mental disability that substantially limited the major life activity of working. (Yutzy)

10. In connection with her claim for failure to accommodate, Perkins informed the VA (Jeanne Morris) of her mental disability in August 2000.

11. During her time at the Albuquerque medical center office, Perkins had difficulty interacting in an acceptable manner with her co-workers. (Perkins; Lewis; Yutzy; Dotson; Exhibit 10)

12. As early as 1999, Perkins began to consider filing an application for disability retirement due to her mental disability. (Perkins; Schwartz)

13. Perkins had serious episodes of depression during most of year in 2000 and early 2001. (Perkins; Yutzy)

14. In July 2000, Perkins was hospitalized due to her mental depression. (Perkins; Exhibit E)

15. The hospital record for that admission notes suicidal ideation for the past two weeks. (Yutzy)

16. Perkins also related to Dr. Schwartz that she harbored suicidal thoughts at times relevant to her disability claim. (Schwartz)

17. Up until August, 2000, Perkins was directly supervised by Greg Ferris, Regional Counsel, who was located in Phoenix, Arizona. (Ferris)

18. After August, 2000, Perkins's immediate ("first-line") supervisor was Jeanne Morris, Assistant Regional Counsel, who was also located in Phoenix, Arizona. (Morris)

19. After August 2000, Mr. Ferris became Perkins's second-line supervisor. (Ferris)

20. Perkins was able to take approximately 20 days per year in annual leave. (Morris)

21. Perkins was able to take sick leave as necessary due to her medical needs. (Morris)

22. Perkins earned 4 hours of sick leave every two weeks. (Morris)

23. Perkins earned 6 hours of annual leave every two weeks. (Perkins; Morris)

24. Perkins was able to take leave without pay. (Morris)

25. In August 2000, as an accommodation for her mental disability, Perkins requested to work in the area of contracts. (Perkins)

26. This was Perkins's first request for accommodation. (Perkins)

27. In September 2000, Perkins made a request for intermittent leave, which was granted. (Morris)

28. Prior to Perkins requesting leave from work in the fall of 2000, she received good performance appraisals from her managers as well as a grade-level promotion from a GS-13 to a GS-14 approved by Mr. Ferris. (Ferris; Perkins)

29. Beginning in the fall of 2000, Perkins's work performance deteriorated. (Ferris; Morris)

30. During the time period November 2000 through October 19, 2001, Perkins was not subject to any material change in the terms and conditions of her employment.

31. The VA provided accommodation to Perkins in the form of annual leave, sick leave, paid administrative leave, leave without pay, a flexible work schedule, and a modified work schedule with Wednesdays off, among others. (Perkins; Ferris; Morris; Valois)

32. Perkins's supervisors managed her in a way to be sensitive to her mental condition. (Ferris; Morris)

33. Perkins was on leave from work from November 21, 2000, until September 4, 2001, of which all but one week (beginning November 21, 2000) was paid leave. (Perkins; Ferris; Valois; Complaint, ¶¶ 26, 47; Exhibit Q)

34. Perkins did not suffer any loss of pay while she was on leave prior to her voluntary resignation. (Perkins)

35. As a result of Perkins's request for sick leave, Ms. Morris asked Perkins in November 2000 for medical documentation to substantiate her request for leave. (Morris; Exhibits P, T)

36. The documentation Perkins provided was unsatisfactory. (Morris)

37. Regarding Perkins's disability claim, she first contacted an EEO counselor on December 20, 2000. (Perkins).

38. On November 27, 2001, Perkins's first-line supervisor, Jeanne Morris, requested additional information to document her request for accommodation. (Morris; Exhibit Q, Memorandum from Jeanne Morris dated November 27, 2000)

39. Perkins failed to provide adequate medical information to the VA concerning her disability and request for accommodation.

40. Perkins's supervisors Greg Ferris and Jeanne Morris received information on December 8, 2000, from one of Perkins's co-workers, Virgil Lewis, another attorney in the Albuquerque office, indicating that he feared for his safety due to Perkins's mental state. (Ferris; Morris; Lewis; Exhibit S, Email from Virgil Lewis to Jeanne Morris, dated

5

December 8, 2000; Exhibit X, Memorandum from Jeanne Morris to Barbara Perkins dated December 13, 2000; Exhibit AT, Memorandum from Virgil Lewis dated April 4, 2001; Exhibit AP, Letter dated March 27, 2001, from Judith Valois to Barbara Perkins)

41. Perkins's supervisors were concerned with her mental status and any danger she posed to herself or others. (Ferris; Morris; Valois)

42. On December 13, 2000, Perkins applied to the VA for disability retirement based on her alleged mental disability. (Perkins; Complaint, ¶ 62; Exhibit U, Disability retirement application)

43. As of the Fall of 2000, Perkins believed that she could no longer perform her job due to depression. (Perkins)

44. In support of her disability retirement application, Perkins provided to the VA a letter from her psychiatrist Dr. Schwartz dated December 20, 2000. The letter detailed why she could no longer perform her duties as a VA attorney. (Perkins; Schwartz; Exhibit AC, Letter from Dr. Carol Schwartz dated December 20, 2000)

45. Dr. Schwartz opined that Perkins would be unable to perform her job as a VA attorney due to her major depression. (Schwartz)

46. Perkins filed her formal administrative EEO complaint on February 12, 2001. (Perkins; Complaint, ¶ 4.a. (alleges filed on or about February 13, 2001); Exhibit D).

47. On or about February 26, 2001, Perkins withdrew her application for disability retirement. (Perkins; Complaint, ¶ 66)

48. On March 2, 2001, Perkins's psychiatrist, Dr. Carol C. Schwartz, notified the VA that Perkins "will soon be able to perform the full duties of her position." (Schwartz; Exhibit AE, Letter from Carol C. Schwartz, M.D., dated March 2, 2001)

49. On March 14, 2001, Perkins requested the accommodations set forth in a letter from her then-attorney, Fred Abramowitz. (Exhibit AG, Letter from Abramowitz to Ms. Judy Valois dated March 14, 2001)

50. The VA again requested additional medical documentation to support Perkins's request for accommodation on March 21, 2001. (Valois; Exhibit AI, Letter from Judith Valois to Fred Abramowitz, Esq. dated March 21, 2001)

51. On March 23, 2001, an interim agreement was reached concerning Perkins's request for accommodation. (Valois; Exhibit AH, Letter from Judith Valois to Barbara Perkins, Esq., dated March 23, 2001)

52. Perkins was placed on paid administrative leave for three weeks. (Valois)

53. On or about March 29, 2001, VA attorney Judy Valois sent to Dr. Jule Moravec, a contract psychologist for the VA, medical information pertaining to her request for accommodation. (Valois; Exhibit AX, Moravec's Curriculum Vitae)

54. On March 30, 2001, the VA made available to Perkins her Official Personnel File and Medical Folder. (Exhibit AR).

55. On March 21, 2001, the VA again requested additional medical documentation to support Perkins's request for accommodation. (Valois; Exhibit AL)

56. Dr. Moravec had a need to know the information in order to provide the VA with an opinion concerning Perkins's request for accommodation and ability to function safely in the workplace. (Valois)

57. One of Perkins requested accommodations for her mental disability was to be assigned work in the area of contracts and avoid working on other types of cases. (Perkins; Complaint, ¶ 39)

58. Perkins consented to the release of her medical information to Dr. Moravec. (Valois; Exhibit AM, Letter from Perkins to Judy Valois dated March 26, 2001)

59. Due to Perkins's mental condition as manifested in 2000 through early 2001, it was reasonable for the VA to request that she not return to work until it was assured that she would not pose a threat to her or her co-workers' safety. (Yutzy)

60. On April 13, 2001, Dr. Jule Moravec, a VA contract psychologist, submitted an evaluation of Perkins in which he opined that she was not a qualified individual with a disability within the meaning of the Rehabilitation Act because she would not be able to perform the essential functions of her position even with accommodation. (Moravec; Exhibit AW, Evaluation of Disability Report – Barbara Perkins dated April 13, 2001; Exhibit AY, Letter from Judith Valois to Angela B. Cornell, Esq. dated May 17, 2001)

61. Dr. Moravec also indicated that he believed Perkins to be a danger to herself if she returned to work. (Moravec; Ferris)

62. During 2000 and early 2001, Perkins could not be accommodated due to her debilitating mental disability. (Yutzy)

63. Because Perkins failed to provide adequate documentation about her mental disability or answer questions from Dr. Moravec, among other things, Perkins failed to participate in good faith in the interactive process to reach an accommodation to her disability.

64. On July 25, 2001, Perkins withdrew her request for accommodation in order to return to work. (Perkins; Valois; Complaint, ¶ 90).

65. On July 31, 2001, Agnes Dotson, who had previously worked with Perkins as a paralegal in the regional counsel's office, resigned her employment after learning that Perkins would be returning to work again. (Dotson; Exhibit BC)

66. Ms. Dotson's resignation was due to her concern for her personal safety if Perkins returned to work in the same office. (Dotson)

67. Ms. Dotson chose to make August 31, 2001, her last day at work in order to avoid having to work with Perkins, who was to return to work on September 4, 2001. (Dotson)

68. From the time that Perkins requested an accommodation for her mental disability, the VA participated in good faith in the interactive process in order to provide her with a reasonable accommodation. (Ferris; Morris; Valois)

69. Perkins voluntarily resigned her employment on October 19, 2001. (Perkins; Complaint, ¶ 96)

70. On October 19, 2001, Perkins left the VA to become an Administrative Law Judge with the Social Security Administration. (Perkins; Complaint, ¶ 96)

71. Perkins starting salary as an ALJ was greater than her salary at the VA. (Perkins)

72. After her move to Tennessee to assume the ALJ position, Perkins continued to experience stressors in her life. (Perkins; Burnside; Yutzy)

73. Prior to the initiation of this lawsuit in federal court, Perkins was provided or given access to all of the information maintained by the VA that she requested.

74. Perkins did not suffer any emotional distress due to any unlawful actions on the part of the VA employees.

75. Perkins had multiple stressors in her life during the time relevant to this litigation. (Perkins; Schwartz; Burnside; Yutzy)

76. Any emotional distress that Perkins suffered during the times relevant to this lawsuit was due to a pre-existing mental condition and non-job related stressors and not due to the actions of her employer.

77. Perkins suffered no economic damages arising from her failure to accommodate claim, retaliation claim, or Privacy Act claims.

78. Perkins suffered no actual damage due to the release of her medical information to Dr. Moravec.

## CONCLUSIONS OF LAW[1]

### Failure to Accommodate

79. The Department of Veterans Affairs is an employer covered by the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 791.

80. Perkins suffered from a mental disability (major depression) that substantially limited a major life activity (working). 29 C.F.R. § 1614.203.

81. Perkins was not, however, a qualified individual with a disability under the Rehabilitation Act because she failed to demonstrate that she could perform the essential functions of her job as an attorney for the VA with or without accommodation. *Id.*; *Woodman v. Runyon*, 132 F.3d 1330, 1338-39 (10th Cir. 1997).

82. The VA reasonably accommodated Perkins's disability to the extent that it could.

83. The VA was not obligated under the Rehabilitation Act to provide Perkins with the accommodations she requested because they were unreasonable.

---

[1] Please see Defendant's Trial Brief for a more detailed legal analysis of Perkins's remaining claims.

84. The VA properly pled the defense of undue hardship. Answer, p. 10, ¶ 5.

85. The VA was not obligated under the Rehabilitation Act to provide Perkins with the accommodations she requested because they would have imposed an undue hardship upon the operations of the VA. *Woodman*, 132 F.3d at 1344; 29 C.F.R. § 1614.203(c).

86. The VA participated in good faith in the interactive process.

87. Perkins did not participate in good faith in the interactive process because she did not provide the VA with the information that it needed to make a decision regarding her disability needs and ability to return to work without posing a risk to herself or her co-workers.

88. Because it was reasonable for the VA to be concerned about Perkins's mental state and ability to function safely in the work environment, it was not obligated to allow her to return to work until it was satisfied she could do so safely. 29 C.F.R. § 1614.203(a)(6) (2000).[2]

89. Accordingly, the VA did not violate the Rehabilitation Act by declining to allow Perkins to return to work in March 2001 or by failing to provide her with a reasonable accommodation.

---

[2] Section 1614.203(a)(6) provides: "*Qualified individual with handicaps* means with respect to employment, an individual with handicaps who, with or without reasonable accommodation, can perform the essential functions of the position in question **without endangering the health and safety of the individual or others** . . . ." (Emphasis added).

90. Even if I found that the VA failed to accommodate Perkins's disability, she suffered no injury, economic or non-economic.

91. Accordingly, she is not entitled to any relief from this Court.

92. Judgment will therefore be entered for the defendant on Perkins's claim under the Rehabilitation Act.

**Retaliation**

93. Perkins engaged in protected activity under the Rehabilitation Act because she pursued a claim of discrimination against the VA when she filed a complaint of discrimination on February 12, 2001.

94. Subsequent to that time, however, Perkins was not subject to an adverse employment action.

95. The placement of Perkins on paid administrative leave does not constitute an adverse employment action where she lost no pay or other employment benefit.

96. Indeed, less than two months after returning to her job, Perkins left to assume the position of an Administrative Law Judge with the Social Security Administration.

97. Even if Perkins had been subject to an adverse action, which she was not, she failed to prove by a preponderance of the evidence that the action was causally linked to her filing of the 2001 EEO complaint.

98.     Perkins failed to offer evidence sufficient for a trier of fact to find that the VA's reasons for placing her on paid administrative leave were actually due to her filing of an EEO claim rather than the prudent management of the agency and its workplace.

99.     Accordingly, Perkins failed to prove her claim of retaliation, and judgment must be entered for the defendant.

**Privacy Act**

100.    For several reasons, Perkins failed to prove her claim that the VA violated the Privacy Act when it disclosed medical information to Dr. Moravec in connection with his review of her request for accommodation.

101.    First, Perkins failed to prove that the VA willfully violated the Privacy Act. 5 U.S.C. § 552a(g)(4).

102.    As such, liability may not be imposed for VA's disclosure of medical information to Dr. Moravec.

103.    Second, the disclosure of Perkins's medical information to Dr. Jule Morevac did not violate the Privacy Act because he had a need to know the information in connection with his review of Perkins's request for accommodation. 5 U.S.C. § 552a(b)(1).

104.    The Privacy Act excepts from its prohibition on disclosure, disclosures made to individuals with a need to know the information.

105. Third, the disclosure of Perkins's medical information to Dr. Jule Morevac also constituted a routine use of that information and therefore its release did not violate the Privacy Act. 5 U.S.C. § 552a(b)(3).

106. The VA's disclosure of the information to Dr. Moravec was done in connection with its evaluation of whether given Perkins's severe mental disability, it could retain her as an employee.

107. Fourth, Perkins consented to the release of her medical information to Dr. Jule Morevac, and therefore its release to him did not violate the Privacy Act. 5 U.S.C. § 552a(b).

108. In regard to her claim that the VA failed to provide her a copy of her medical information in its possession, it is moot because she was provided that information in March 2001.

109. Finally, Perkins failed to prove that she suffered any actual damage from the disclosure or non-disclosure of her medical information.

110. As such, Perkins is not entitled to recover damages on her claim under the Privacy Act. *Doe v. Chao*, 124 S. Ct. 1204, 1206 (2004).

111. Judgment will be entered for the defendant on Perkins's Privacy Act claims.

\* \* \*

112. As a prevailing party, the defendant is entitled to his costs upon the filing of a Bill of Costs within 10 days of the entry of judgment. Fed. R. Civ. P. 54(d).

113. Judgment will enter as specified above.

DATED this 16th day of July, 2004.

                                           Respectfully submitted,

                                           DAVID C. IGLESIAS
                                         United States Attorney

                                         Mark S. Pestal
                                         Edwin G. Winstead
                                         Special Attorneys
                                         District of New Mexico
                                         Assistant United States Attorneys
                                         District of Colorado
                                         1225 Seventeenth Street, Suite 700
                                         Denver, Colorado 80202
                                         (303) 454-0100

## **CERTIFICATE OF SERVICE**

This is to certify that on this 16th day of July, 2004, a true and correct copy of the forgoing **DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** was mailed first class, postage prepaid, to:

[WITH DISK TO COURT]

George Bach, Esq.
K. Lee Peifer, Esq.
LAW OFFICES OF K. LEE PEIFER
108 Wellesley, S.E.
Albuquerque, N.M. 87106

Via email:

judy.valois@mail.va.gov

Judith Valois
Attorney Advisor
Office of General Counsel
Department of Veterans Affairs
Washington, D.C. 20420

_____
Office of the United States Attorney (D. Colo.)