UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
04 JUL 19 PM 4:28

BARBARA L. PERKINS,

Plaintiff,

vs. No. CIV 02-1392 MCA/WDS

THE HONORABLE ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS,

Defendant.

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Plaintiff Barbara L. Perkins, by and through her counsel of record, and respectfully submits the following proposed findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Perkins served as a general attorney to the Department of Veterans Affairs, Office of General Counsel from August 1986 until October 2001. Plaintiff's Exhibit 17; Testimony of Plaintiff.

2. During her time in Defendant's employ, Plaintiff consistently received excellent performance evaluations. Plaintiff's Exhibits 3, 18, 19, 20, 21, and 22; Testimony of Gregory Ferris; Testimony of Plaintiff.

3. Perkins's last appraisal with Defendant was dated November 10, 2000, and again her work was deemed successful in all categories and she was described as having completed "excellent legal work." Plaintiff's Exhibit 3; Testimony of Gregory Ferris; Testimony of Plaintiff.



69

4. On July 12, 2000, Plaintiff's supervisor, Gregory Ferris, informed Plaintiff that she was his "best" attorney. Testimony of Plaintiff.

5. On January 17, 2001, Ferris told an EEO counselor for Defendant's Office of Resolution Management that Perkins was his "best attorney". Plaintiff's Exhibit 41.

6. At no time during her 15 years of service with the Defendant was Perkins ever disciplined for any reason, or charged with any misconduct. Testimony of Plaintiff; Testimony of Gregory Ferris.

7. During her employment with Defendant, Perkins suffered from depression and dysthymia, disabilities that substantially limited her in a major life activity. Defendant's Exhibit T; Defendant's Exhibit BD; Testimony of Plaintiff; Testimony of Carol Schwarz, M.D.

8. During Plaintiff's employment with Defendant, Defendant discriminated against her on account of her disability by unfairly limiting training opportunities for her. Plaintiff's Exhibit 2; Testimony of Plaintiff; Testimony of Gregory Ferris.

9. On or about November 7, 2000 Perkins requested to be nominated to two JAG sponsored courses which would address her contract interests and prepare her for work with federal contracts. Plaintiff's Exhibit 2; Testimony of Plaintiff.

10. Ferris did not approve Perkins's request to attend the courses. Plaintiff's Exhibit 2; Testimony of Plaintiff; Testimony of Gregory Ferris.

11. In summer 2000, Ferris instructed Perkins not to open office mail, even though she was alone, without clerical assistance. Testimony of Plaintiff; Testimony of Gregory Ferris.

12. Plaintiff's non-disabled counterpart, Virgil Lewis, was not prohibited from opening mail. Testimony of Gregory Ferris; Testimony of Virgil Lewis.

13. Assistant Regional Counsel Jeanne Morris, stationed in Phoenix, Arizona, was Ms.

Perkins's immediate supervisor from August 2000 until she left Defendant's employ. Testimony of Jeanne Morris.

14. On November 27, 2000, in response to Perkins's request for one week of leave without pay, Morris requested that Perkins demonstrate that she could perform the essential functions of her position and instructed Perkins to have her physician identify her disability and describe accommodations needed. Defendant's Exhibit P, Testimony of Plaintiff; Testimony of Jeanne Morris.

15. The Morris memorandum was contrary to Defendant's leave request procedures. This letter was more typically sent in response to a request for accommodation, not for leave. When co-worker Agnes Dotson took a week of leave without pay, she did not receive such a form. Testimony of Norma Murchison; Testimony of Agnes Dotson.

16. In a telephone call on or about December 7, 2000, Ferris told Perkins that her physician could send said a response via e-mail message. Testimony of Plaintiff.

17. On or about December 7, 2000, Perkins' physician, Dr. Carol Schwarz, responded to Morris, identifying Perkins' diagnoses by name and DSM-IV code, and supporting Perkins' requests for accommodations, transmitting said response via e-mail. Exhibit T; Testimony of Carol Schwarz, M.D.

18. On or about December 8, 2000, co-worker Virgil Lewis sent a memorandum to Perkins's immediate supervisor, Jeanne Morris, claiming that he believed Perkins to be "bipolar" and "manic". Defendant's Exhibit S; Testimony of Jeanne Morris; Testimony of Virgil Lewis.

19. Co-worker Dotson had also told Morris that she thought Perkins was "bipolar." Testimony of Jeanne Morris; Testimony of Agnes Dotson.

20. On December 11, 2000 and based on Lewis's e-mail, Morris made accusations regarding

Perkins, stating that she was manic and suggesting she was a danger to others. Defendant's Exhibit T; Testimony of Jeanne Morris; Testimony of Carol Schwarz M.D; Testimony of Plaintiff.

22. On December 11, 2000, Perkins's physician made clear to Morris that she was not a danger to others in the workplace. Defendant's Exhibit T; Testimony of Carol Schwarz, M.D.

23. In December 2000, Ferris and Morris completely disregarded Schwarz's requests that Perkins be allowed more professional interaction and contact, travel and training. Testimony of Plaintiff; Testimony of Carol Schwarz, M.D.

24. On November 11, 2000 and again on December 8, 2000, Perkins requested information on the agency employee leave donation program. Testimony of Barbara L. Perkins, Testimony of Jeanne Morris.

25. Morris delayed her response for information on leave donation, until it was too late for Perkins to take advantage of the information. Testimony of Barbara Perkins; Testimony of Jeanne Morris.

26. On December 12, 2000, Perkins, learning of Morris's contact with her physician, became fearful of reporting for duty and suffered a severe exacerbation of depression. She requested and received extended leave without pay, and was forced to consider disability retirement because of her exacerbated condition. Defendant's Exhibit W; Defendant's Exhibit Z; Defendant's Exhibit AC; Testimony of Plaintiff; Testimony of Carol Schwarz, M.D.

27. From December 12, 2000 through March 26, 2001, Perkins's took leave without pay due to the exacerbation of her depression caused by her supervisor's reference to her as "manic." Defendant's Exhibit W; Defendant's Exhibit Z; Defendant's Exhibit AC; Testimony of Plaintiff; Testimony of Carol Schwarz, M.D.

28. On or about December 13, 2000, Perkins applied for disability retirement through the Office of Personnel Management. Defendant's Exhibit U; Defendant's Exhibit W; Defendant's Exhibit Z; Defendant's Exhibit AC; Testimony of Plaintiff; Testimony of Carol Schwarz, M.D.

29. On December 20, 2000, Plaintiff filed an EEO Complaint of Discrimination. Defendant's Exhibit D; Testimony of Plaintiff.

30. In December 2000, Ms. Perkins requested a copy of her Official Personnel File. Testimony of Plaintiff.

31. Between December 2000 and March 26, 2001, Plaintiff made three separate requests to have access to her Official Personnel File. Plaintiff's Exhibit 7; Testimony of Plaintiff.

32. On March 30, 2001, Defendant finally produced Plaintiff's Official Personnel File. Defendant's Exhibit AR.

33. Amy Taylor, a Human Resource Specialist then-employed by Defendant in Phoenix, Arizona, was scolded by Jeanne Morris for having provided Plaintiff her Official Personnel File. Testimony of Amy Taylor.

34. On February 26, 2001, Perkins withdrew her application for disability retirement. Plaintiff's Exhibit 5; Testimony of Plaintiff.

35. While on leave without pay after December 12, 2000, partly due to a change of medication, Perkins was able to return to work and was released by her physician to do so, with accommodations requested. Plaintiff's Exhibit 6; Plaintiff's Exhibit 24; Plaintiff's Exhibit 25; Defendant's Exhibit AE; Defendant's Exhibit AG; Testimony of Carol Schwarz, M.D.; Testimony of Plaintiff.

36. On March 2, 2001, Perkins informed her supervisors that she could return to work part-time as of March 26, 2001. Defendant's Exhibit AE; Testimony of Carol Schwarz,

M.D.; Testimony of Plaintiff.

37. On March 2, 2001, Dr. Schwartz notified Ferris that Perkins's work-load could be increased to full-time at a later date, and recommended some accommodations. Perkins's attorney followed with a letter dated March 14, 2001, which itemized the requested accommodations for her return. Defendant's Exhibit AE; Defendant's Exhibit AG; Testimony of Plaintiff; Testimony of Carol Schwarz, M.D.

38. One of Perkins's request for accommodations was to work part-time. Defendant had previously granted Plaintiff such a request *pending disability retirement*, but would not allow that as a reasonable accommodation upon realization that she wished to return. Defendant's Exhibit AE; Defendant's Exhibit AG; Defendant's Exhibit V; Testimony of Plaintiff; Testimony of Carol Schwarz, M.D.; Testimony of Jeanne Morris.

39. On or about March 26, 2001, Defendant placed Perkins on administrative leave for three weeks, and banned her from entering her office. Defendant's Exhibit AJ; Defendant's Exhibit AK; Defendant's Exhibit AM; Defendant's Exhibit AN. Testimony of Plaintiff; Testimony of Judith Valois.

40. Defendant retained a Veteran Affairs psychologist, Jule Moravec, Ph. D., ostensibly to assist with dealing with Ms. Perkins's requests for accommodation. Testimony of Gregory Ferris; Testimony of Jule Moravec, Ph.D.

41. Dr. Moravec was a golfing associate of Plaintiff's supervisor, Gregory Ferris, and the acting director of the agency's medical center in Albuquerque, Pat McClem. Deposition of Testimony of Jule Moravec, Ph. D.; Testimony of Elizabeth Licklighter.

42. Dr. Moravec characterized himself as a "friend" of Mr. Ferris. Deposition Testimony of Jule Morvaec, Ph.D.

43. Ferris went on to request information from Lewis and Dotson that could be used against Perkins, which was then submitted to Dr. Moravec. Plaintiff's Exhibit 9 and 10; Defendant's Exhibit AT; Testimony of Gregory Ferris; Testimony of Norma Murchison.

44. No other employees were solicited for information regarding Ms Perkins. Testimony of Gregory Ferris.

45. Defendant's counsel, Judith Valois, sent medical documentation, which was part of the disability retirement application, to Dr. Moravec on March 29, 2001. Defendant's Exhibit U; Plaintiff' Exhibit 26; Deposition Testimony of Jule Moravec, Ph. D.; Testimony of Judith Valois.

46. Valois accessed Perkins' disability retirement application file without Perkins's knowledge or consent. Plaintiff's Exhibit 26; Testimony of Plaintiff.

47. Morris manufactured an unreasonably altered description of the "essential functions" of Perkins's job and provided it to the agency's retained psychologist, Jule Moravec. Plaintiff's Exhibit 26; Defendant's Exhibit C; Deposition Testimony of Jule Moravec, Ph. D. Testimony of Jeanne Morris.

48. Having been provided a copy of Perkins's withdrawn disability application by the Defendant, the statements of Lewis and Dotson, and the "essential functions" statement created by Jeanne Morris. Defendant's expert concluded that Perkins could not perform the essential functions of the job she had more than successfully performed for over 15 years. Plaintiff's Exhibit 26; Defendant's Exhibit AW. Deposition testimony of Jule Moravec, Ph. D.

49. Valois wrote to Plaintiff on April 12, 2001 to advise her that the agency expert had determined that she could not perform the essential functions of her job without incurring a high probability of substantial harm. Defendant's Exhibit AU.

50. Defendant repeatedly asked Perkins for fitness-for-duty examinations, despite having

already made a determination that Perkins' suffered from a disability. Defendant's Exhibit AU; Defendant's Exhibit AY; Defendant's Exhibit BA; Testimony of Plaintiff; Testimony of Judith Valois.

51. Defendant did not engage in the interactive process to determine a reasonable accommodation. Defendant's Exhibit AU; Defendant's Exhibit AY; Defendant's Exhibit BA; Testimony of Plaintiff; Testimony of Judith Valois.

52. Defendant was aware of its obligations under the Rehabilitation Act. Plaintiff's Exhibit 31; Plaintiff's Exhibit 37; Testimony of Judith Valois.

53. Defendant made a determination that Perkins could not perform the essential functions of her job based on the disability retirement application that was withdrawn by Perkins. Plaintiff's Exhibit 26; Defendant's Exhibit AW. Deposition testimony of Jule Moravec, Ph. D.

54. Defendant's expert ignored an unsolicited letter of support from Defendant's then-Chief Of Clinical Operations, David Graeber, M.D., a psychiatrist who worked with Perkins. Plaintiff's Exhibit 12; Deposition Testimony of Jule Moravec, M.D., Testimony of David Graeber, M.D.

55. The Defendant further denied Perkins access to her office and prohibited her from entering the building alluding to a risk of harm to herself and others. Defendant's Exhibits AH; AI; AJ; AL; AM; AO; AU. Testimony of Plaintiff; Testimony of Judith Valois.

56. On July 6, 2001, Plaintiff amended her EEO Complaint to include the agency's failure to permit her to return to work or accommodate her, its continuing insistence in a mental fitness-for-duty exam, and its unauthorized access to her medical records. Plaintiff's Exhibit 42; Testimony of Plaintiff.

57. Realizing that the Defendant would neither engage in the interactive process nor grant her request for an accommodation, Perkins was forced on July 30, 2001, to withdraw her request for

accommodation in order to return to her position. Defendant's Exhibit BB; Testimony of Plaintiff.

58. Defendant allowed Perkins to return to duty on September 4, 2001, but, from September 4, 2001 until Perkins's departure, isolated Perkins, refused to provide her the assistance of the office's support staff, refused to speak to her, and excluded her from involvement in selection of new support personnel. Plaintiff's Exhibits 15 and 16. Testimony of Plaintiff; Testimony of Jack Sanzari; Testimony of Norma Murchison.

59. In October 2001, Perkins resigned her position at the Department of Veterans Affairs in Albuquerque, New Mexico, as a result of the discriminatory treatment. Testimony of Plaintiff.

60. As a result of Defendant's discriminatory and retaliatory conduct, Perkins suffered emotional injury and suffered lost wages and benefits. Defendant's Exhibits BD, BE; Testimony of Plaintiff; Testimony of Charles Perkins, Jr.; Testimony of Carol Schwarz, M.D., Testimony of Sharon Burnside, M.D.

62. Defendant's discriminatory and retaliatory conduct inhibited Perkins's professional growth. Testimony of Plaintiff; Testimony of Charles Perkins, Jr.

## CONCLUSIONS OF LAW

1. During her employment with Defendant, Perkins was a qualified individual with a disability.

2. Defendant failed to provide Perkins reasonable accommodations and treated her in a disparate manner because of her disability.

3. Defendant retaliated against Perkins for opposing unlawful discriminatory practices under the Rehabilitation Act.

4. Defendant violated the Rehabilitation Act by refusing to accommodate Perkins's disabilities.

5. Defendants treated Perkins in a disparate manner based on her mental disability.

6. Defendant violated the Privacy Act by accessing Perkins's disability retirement application and copying that information to Dr. Moravec, without the prior written consent of Perkins.

7. Defendant violated the Privacy Act by unreasonably delaying the production of her Official Personnel File.

8. The VA willfully and intentionally ignored the Privacy Act limitations by disclosing the disability retirement application information.

9. The VA willfully and intentionally ignored the Privacy Act by unreasonable delaying the production of her Official Personnel File.

10. Plaintiff has proved that she is entitled to:

a. All salary, bonuses, paid leave, and accrued interest thereon which Plaintiff would have earned had she not been discriminated against on account of her disability, in the amount of $ __________.

b. Have her all records maintained by Defendant expunged of any negative entries incurred, and to require Defendant to retrieve or discredit, such negative records it has shared with third parties, including other agencies.

c. Compensatory damages in an amount adequate to compensate Plaintiff for her mental anguish, pain and suffering and other non-pecuniary losses suffered as a result of Defendant's unlawful conduct, in the amount of $ __________.

d. Compensatory damages in an amount equivalent to the cost of relocating Perkins and her

family from Middlesboro, Kentucky to Albuquerque, New Mexico as a result of her constructive discharge, in the amount of $ __________.

e. Damages for violation of the Privacy Act in the amount of _______.

f. Plaintiff's reasonable attorneys' fees and costs of this action, in the amount of $ ________.

g. Any other further relief as may be just and equitable.

Respectfully submitted,

PEIFER & CORNELL, LLP

K. Lee Peifer
George Bach
108 Wellesley Drive SE
Albuquerque, NM 87106
(505) 266-4335

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading was sent to opposing counsel of record via U.S. Mail this 19th day of July 2004.

George Bach